IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| INSTALLATION SERVICES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04 C 6906 |
| | ) | |
| ELECTRONICS RESEARCH, INC., | ) | |
| CROWN CASTLE BROADCAST USA | ) | |
| CORP., and SHORENSTEIN REALTY | ) | |
| SERVICES, L.P., | ) | |
| | ) | |
| Defendants, | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Installation Services, Inc. (ISI), has invoked the Court's diversity jurisdiction, 28 U.S.C. § 1332(a), to sue Electronics Research, Inc. (ERI), Crown Castle Broadcast USA Corp., and Shorenstein Realty Services, L.P., for a variety of state law claims related to a construction project on the Hancock building in downtown Chicago. In response, ERI has sued ISI for abuse of process, and Shorenstein has sued ERI seeking indemnity on certain claims.

ERI and Crown Castle have moved for summary judgment on ISI's original claims, and ERI has moved for summary judgment on its counterclaim and Shorenstein's cross claim. For the following reasons, the Court denies ERI's and Crown Castle's motions on ISI's original claims, denies ERI's motion on its counterclaim, and grants ERI's motion on Shorenstein's cross claim.

### Facts

This case stems from a 2001 construction project to remove and replace a broadcast antenna atop Chicago's Hancock building. Crown Castle owns and operates wireless

communication infrastructures and manages rooftop affairs for Shorenstein, the owner of the Hancock building. In January 2001, Crown Castle began negotiating with ISI, a company that installs communications towers and antennae, to remove a CBS television affiliate's existing antenna and install a replacement.

In April 2001, Crown Castle instructed ISI to begin preliminary work on the project, with the expectation that the parties would sign a contract for the remainder of the job. Part of that work involved the development of a "picking plan," which is the engineering for a winch placement and boom and rigging design. Crown Castle hired ERI, a company that designs, manufactures, and installs towers and antennae, to review and approve ISI's picking plan at a total cost of $30,402.66.

In September 2001, Crown Castle informed ISI that it would have to negotiate directly with CBS, the owner of the antenna, for a contract for the remainder of the work. On October 12, 2001, ISI sent CBS a proposed agreement, which provided that ISI would complete the project for $544,652 plus a twenty-five percent premium if the project ran into the winter. The payment terms were fifty percent upon acceptance and fifty percent upon project completion. After receiving ISI's proposal, CBS struck the twenty-five percent premium clause and signed and returned the edited contract along with a check for $272,326 (half the contract price). ISI refused to accept the contract absent the winter conditions premium and counter-offered, proposing that CBS simply pay for its employees' time if weather prevented them from working. CBS rejected ISI's counter-offer, broke off negotiations, and hired ERI – at a price of $1,750,000 – to complete the project the following year.

ISI claims that CBS broke off negotiations not because of the insistence on a winter

2

conditions premium, but because ERI and Crown Castle made false statements about ISI's work performance. ISI has presented sworn statements by several individuals who worked on the Hancock project who say they heard ERI's owner, Tom Silliman, and Crown Castle's manager of rooftop operations, Mead Elliot, tell CBS's representative, Chuck deCourt, on numerous occasions prior to December 17 that ISI was overcharging and doing poor quality work. *See* East Aff. ¶11; Quinn Aff. ¶11; Noonan Aff. ¶12. ISI's president of operations, Ronald Romano, says that he learned about these statements in August 2004 after having a conversation about the Hancock operation with Frank Noonan, a former Crown Castle employee.

ISI filed this lawsuit on October 27, 2004, after ERI filed suit against ISI in state court in August 2004 to recover unpaid engineering fees invoiced during the Hancock project.

## Discussion

Summary judgment is proper when the evidence, when viewed in a light most favorable to the non-moving party, presents "no genuine issue as to any material fact" such that "the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). In applying this standard, all disputed issues of fact are to be resolved in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

Before addressing the merits of ISI's claim, the Court must address a procedural issue that has been raised in the parties' briefs. ISI argues in response to ERI's and Crown Castle's motions for summary judgment that its complaint includes numerous claims not addressed by those motions. ISI says that in addition to claims against all three defendants for defamation, tortious interference with prospective economic advantage, and indemnity, the complaint also

3

includes claims against all three defendants for breach of contract, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, promissory estoppel, and tortious interference with contract. ERI and Crown Castle contend that ISI's complaint fails to give fair notice of the latter claims as required by Federal Rule of Civil Procedure 8(a)(1). They also argue that the complaint fails to demand judgment for the relief ISI seeks for these claims, *id.* 8(a)(3), and fails to state in separate counts each claim founded upon a separate transaction or occurrence. *Id.* 10(b). Shorenstein contends that the complaint only gives fair notice of ISI's claim for indemnity.[1]

The Court agrees that ISI's complaint fails to give fair notice, as required by Rule 8(a), of a claim for breach of or interference with contract, a claim stemming from the Illinois Consumer Fraud and Deceptive Practices Act, or of any claim against Shorenstein other than the claim for indemnity. Though the Federal Rules' liberal notice pleading standard is not particularly demanding, ISI's complaint makes no mention of a contract to which ISI was a party or any fraudulent or deceptive behavior directed towards ISI. Nor does it mention anything at all about defamation or interference by Shorenstein. Any such claims are dismissed. *See Hartz v. Friedman*, 919 F.2d 469, 470 (7th Cir. 1990) (noting that a court may dismiss a complaint for failure to comply with Federal Rule of Civil Procedure 8(a)).

The Court is also skeptical that the complaint gives fair notice of a promissory estoppel claim. In any event, this claim is founded on a separate transaction or occurrence from the

---

[1] Shorenstein makes this argument for the first time in its response to ERI's motion for summary judgment on Shorenstein's cross claim. Nevertheless, the issues are identical to the ones addressed by the parties' briefs on ISI's original claims. The Court therefore considers them along with the other issues raised by the complaint.

defamation and tortious interference alleged by ISI in the complaint and should have been stated in a separate count as required by Rule 10(b). Though that rule does not specify the appropriate remedy for violations of its provisions, courts have the authority to require compliance with the rule. *See Three D Departments, Inc. v. K Mart Corp.*, 670 F. Supp. 1404, 1409 (N.D. Ill.1987); CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1324 (3d ed. 1998). The purported promissory estoppel claim is also dismissed.

Finally, Crown Castle argues that ISI's complaint does not give adequate notice of a claim of interference with prospective economic advantage. The complaint, however, states that "[a]s a direct and proximate result of . . . intentional conduct by ERI and Crown Castle, CBS and Shorenstein refused to negotiate in any way with ISI at the December 17, 2001 meeting." Amend. Compl. ¶17. This is sufficient to provide fair notice of the claim. Though the phrase "interference with prospective economic advantage" does not appear anywhere in the body of the complaint, the Federal Rules only require a short and plain statement of the party's claims. FED. R. CIV. P. 8(a).

### 1. Defamation

ERI and Crown Castle both move for summary judgment on ISI's defamation claim, arguing that it is barred because John Rukavina, ISI's foreman on the Hancock project, knew about ERI's alleged statements more than two years before ISI filed suit. *See* 735 ILCS 5/13-201 (establishing one year statute of limitations); *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 61 Ill. 2d 129, 136-37, 334 N.E.2d 160, 164 (1974) (statute of limitations begins to run when plaintiff knows or should know of defamatory statement). ISI counters that Rukavina's knowledge should not be imputed to the corporation.

An agent's knowledge is imputed to his principal if the knowledge concerns a matter within the scope of an agent's authority and was acquired in the scope of his duties. *See Bryant v. Livigni*, 250 Ill. App. 3d 303, 308, 619 N.E.2d 550, 555 (1993). "[F]or knowledge to be imputed, the agent must have not just a duty in relation to the subject matter, but a duty to speak to his principal about the specific item of knowledge." *Evanston Bank v. Conticommodity Svcs., Inc.*, 623 F. Supp. 1014, 1035 (N.D. Ill. 1985) (citing Restatement (Second) Agency § 275 cmt. c). This is a question of fact "which takes into account the nature of the information, the circumstances in which the agent received it, and the agent's position in the corporate hierarchy." *Id.* at 1034. In *Evanston Bank*, a bank sued a commodities broker for excessive trading on the bank's account. The broker moved for summary judgment arguing that the bank ratified the trades because – as the bank requested – the broker sent a record of each transaction to the bank's cashier. The court held that the scope of the cashier's authority was an issue of fact and denied summary judgment.

ERI and Crown Castle argue that Rukavina's knowledge should be imputed to ISI as a matter of law because Rukavina was undisputedly ISI's primary agent in charge of the Hancock building project and as such should have relayed the defamatory remarks through the corporate hierarchy. ISI, on the other hand, offers Rukavina's deposition, in which he testified that he only made sure the work got done and had no role in the financial or payment arrangements, Rukavina Dep. at 37, 111, 130, as well as Romano's deposition, in which he testified, when asked whether he would expect Rukavina to tell him if someone was bad mouthing his company, "I don't know. He might not want to make waves." Romano Dep. at 148.

Given this evidence, the Court – as in *Evanston Bank* – is unable to say that Rukavina's

6

knowledge of ERI's and Crown Castle's alleged defamatory statements to CBS is imputed to ISI as a matter of law. A jury reasonably could find that Rukavina's authority only required him to oversee the actual work on the job and did not include a duty to speak to Romano about what ERI and Crown Castle were telling CBS about ISI.

The cases cited by ERI and Crown Castle do not demand a different result. In *St. Paul Mercury Ins. Co. v. Statistical Tabulating Corp.*, 155 Ill. App. 3d 545, 550, 508 N.E.2d 433, 437 (1987), the court held as a matter of law that a salesperson's knowledge of a potential claim by a customer should be imputed to the corporation. In that case, however, the corporation admitted that the salesperson had responsibility for servicing the account and that he received the correspondence in the scope of his employment. *Id.* In this case, no such admission was made. In *Bryant*, 250 Ill. App. 3d at 310, 619 N.E.2d at 557, the court merely affirmed a jury verdict that based liability on findings of agency at trial, and in *Acuff v. IBP, Inc.*, 77 F. Supp. 2d 914, 923 (N.D. Ill. 1999), the court held only that a reasonable jury could find liability against a company for intrusion upon seclusion based on a nurse's knowledge that employee examinations were being taped in the nurse's office. The court did not rule as a matter of law. *Id.*

ERI and Crown Castle also argue that ISI's claims are time-barred because ISI should have known after being replaced on the Hancock job that it might have a cause of action against ERI and Crown Castle. Under Illinois law, a limitations period begins to run when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Knox Coll. v. Celotex Corp.*, 88 Ill. 2d 407, 416, 430 N.E.2d 976, 980-81 (1982). The cause of action

7

accrues when the party knows or reasonably should know of the injury and that it was wrongfully caused. *See Cont'l Cas. Co., Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 329 Ill. App. 3d 686, 702, 768 N.E.2d 352, 364 (2002). The question is usually one of fact. *See Knox Coll.*, 88 Ill. 2d at 416, 430 N.E.2d at 981.

In *Knox*, a university sued a contractor for negligently installing a roof. The defendant argued that the plaintiff's claim was barred because it knew the roof leaked almost as soon as it was installed. The plaintiff insisted that it thought the leaks could be corrected easily and did not realize the extent of its injury until an independent inspection revealed the problems were extensive. The court held that the issue was best resolved by a jury and reversed the trial court's grant of summary judgment. *Id.* at 417.

In this case, there are similarly conflicting accounts of when ISI had the requisite notice. ERI and Crown Castle maintain that ISI should have known it was injured and that its injury was wrongfully caused when CBS removed it from the Hancock project. ISI, on the other hand, says that it had no idea that ERI and Crown Castle had anything to do with CBS's decision until Ronald Romano, ISI's president – in response to ERI's state court lawsuit – called Frank Noonan, a former Crown Castle employee, in 2004 and asked him whether Mead Elliot of Crown Castle had been "bad mouthing" him on the work site. Romano Dep. at 49.

Given this conflicting evidence, the Court cannot determine as a matter of law when ISI should have known that its injury was wrongfully caused. A jury could view suspiciously Romano's testimony that he did not suspect ISI's injury was wrongfully caused until he received ERI's lawsuit; why would the suit, filed in 2004, have prompted him to ask whether ERI had bad-mouthed ISI in 2001? There is a good argument to be made that Romano's

8

inquiry is indicative of some prior suspicion. But that is an issue of the weight of the evidence, the assessment of which is the jury's function. A jury reasonably could find – if it believed Romano's testimony – that ISI did not have the requisite notice more than one year before it filed suit.

ERI also argues that it is entitled to summary judgment on ISI's defamation claim because no jury reasonably could find that ISI was damaged by ERI's alleged statements. As ISI responds, a defamatory statement is actionable *per se* if it "prejudice a party, or impute lack of ability, in his or her trade, profession or business." *See Bryson v. News Am. Publ'ns., Inc.*, 174 Ill. 2d 77, 88, 672 N.E.2d 1207, 1214-15 (1996). If a statement is defamatory *per se*, "it is unnecessary for a plaintiff to demonstrate actual damage to reputation." *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 381 F.3d 717, 726 (7th Cir. 2004); *see also Bryson,* 174 Ill. 2d at 87-88, 672 N.E.2d at 1214. The alleged statements made by ERI suggest that ISI lacks ability in its trade. ERI is not entitled to summary judgment on this basis.

### 2. Tortious interference with prospective economic advantage

Only ERI has moved for summary judgment on ISI's claim for tortious interference with prospective economic advantage. Crown Castle has elected to stand on its argument – which we have already rejected – that ISI's complaint did not give adequate notice of this claim.

To prevail on a claim for intentional interference with prospective economic advantage, a plaintiff must prove a reasonable expectancy of entering into a valid business relationship, the defendant's knowledge of the expectancy, an intentional or unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and damage to the plaintiff resulting from the defendant's interference. *Anderson v. Vanden*

9

*Dorpel*, 172 Ill. 2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996). ERI argues that ISI has offered no evidence that it expected to enter into a business relationship or that ERI's alleged statements caused CBS to remove ISI from the Hancock project.

ERI submits that ISI had no legitimate business expectancy because ISI rejected CBS's offer to do work on the Hancock building without the winter conditions premium. ERI cites cases holding that an employee or prospective employee has no expectation of a renewed or initial employment contract, *see Anderson*, 172 Ill. 2d at 411, 667 N.E.2d at 1301; *Werblood v. Columbia Coll. of Chi.*, 180 Ill. App. 3d 967, 976, 536 N.E.2d 750, 706 (1989), and that a prospective buyer of property has no actionable expectancy in consummating the deal. *Stefani v. Baird & Warner, Inc.*, 157 Ill. App. 3d 167, 175-76, 510 N.E.2d 65, 71 (1987).

As ISI points out, these cases cannot stand for the proposition that a plaintiff must be a party to a contract before stating a claim for tortious interference with prospective economic advantage. If that were the case, this tort would be indistinguishable from tortious interference with contract, which Illinois clearly recognizes as a separate cause of action. *See La Rocco v. Bakwin*, 108 Ill. App. 3d 723, 731, 439 N.E.2d 537, 543 (1982). In *La Rocco*, the court held that an attorney-client relationship – though terminable at will – was an expectancy sufficient to state a cause of action. *Id.* And in *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 512, 568 N.E.2d 870, 878 (1991), the court held that an at-will employment relationship created an expectancy.

ISI has presented evidence from which a jury reasonably could find that it had a legitimate expectancy of completing the Hancock project. Like the plaintiffs in *La Rocco* and *Fellhaur*, there is evidence that CBS and ISI had an ongoing understanding that ISI would work

on the Hancock building at CBS's pleasure, and unlike the plaintiffs in *Anderson* or *Werblood*, ISI was not negotiating to work for CBS in the first instance or to renew a contract that expired at a definite time. ISI has offered evidence from which a jury reasonably could find that it would have come to terms with CBS absent the alleged interference. For these reasons, the Court rejects ERI's contention that ISI cannot establish this element.

ERI also argues, citing *Republic Tobacco, L.P. v. N. Atl. Trading Co.*, 254 F. Supp. 2d 985, 995 (N.D. Ill. 2002), that ISI has presented no evidence that its removal from the Hancock project was caused by any defamatory statements by ERI. In *Republic Tobacco*, the plaintiff, a roll-your-own cigarette company, sued the defendant for writing defamatory letters to the plaintiff's customers that it contended caused them to stop dealing with plaintiff. The plaintiff offered no evidence, aside from the letters themselves, that the defamatory statements caused the plaintiff's business losses. The court held this was insufficient.

ISI has put forth more evidence of causation than just the defamatory statements. ISI has offered evidence that CBS stopped negotiating with ISI soon after the statements were made, Quinn Aff. ¶11; Sillman Aff. at ¶8, and that CBS hired ERI to complete the job for $1.75 million two months after ISI was fired. Pl. Ex. 7. Given the temporal proximity of the alleged statements and the decision to hire ERI at a higher price, a jury reasonably could find that CBS stopped negotiating with ISI not because of any concern about the winter conditions premium but because of statements made by ERI.

   3.   **Abuse of process**

ERI has moved for summary judgment on its counterclaim against ISI for abuse of process. The elements of abuse of process are the existence of an ulterior purpose or motive

11

and some act in the use of legal process that is not proper in the regular prosecution of the proceedings. *Holiday Magic, Inc. v. Scott*, 4 Ill. App. 3d 962, 966, 282 N.E.2d 452, 455 (1972). To satisfy the first element, a plaintiff must present evidence that the defendant instituted proceedings against him for an improper purpose, such as extortion, intimidation, or embarrassment. *Kumar v. Bornstein,* 354 Ill. App. 3d 159, 165, 820 N.E.2d 1167, 1173 (2004).

ERI claims that ISI filed this lawsuit for the improper purpose of disrupting ERI's legitimate collection efforts in state court. It fails to articulate with any specificity, however, how this lawsuit has hindered or could hinder the state court proceeding. In fact, it appears from the parties' submissions that the parallel lawsuit has, unsurprisingly, continued without interruption. The mere filing of a lawsuit – which is all that ERI has shown – is not enough to sustain a claim for abuse of process. *See Holiday Magic*, 354 Ill. App. 3d at 967, 282 N.E.2d at 455-56. Consequently, the Court denies ERI's motion for summary judgment on its counterclaim.[2]

### 4. Indemnity

ISI has sued Shorenstein for indemnity on any liability ISI may be found to have to ERI for the disputed engineering fees in state court. In response, Shorenstein has cross claimed against ERI for indemnity on the same fees, arguing that ERI signed a February 2002 contract agreeing to indemnify Shorenstein for any claims "arising from [or] relating to the Work," defined as ERI's antenna erection efforts. ERI has moved for summary judgment on Shorenstein's cross claim, arguing that the engineering fees fall outside the purview of the 2002

---

[2] In its response brief, ISI says, "the Court should *sua sponte* enter summary judgment against ERI on its counterclaim, and ISI so moves." The Court declines this request, as it was made after the Court's deadline for filing dispositive motions.

contract.

The Court agrees that the language of this contract excludes the engineering fees, which arose out of work completed in the spring and summer of 2001 and would have been charged regardless of ERI's 2002 work on the building. The fees were charged before the indemnity agreement existed, and, as a result, no jury reasonable could find that they arose from or were related to "the Work." *See Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.*, 902 F. Supp. 150, 153-54 (1995) ("In this case, there is no evidence that [the indemnity agreement's rules] were in effect when the alleged misconduct took place; on the contrary, the only evidence introduced by the parties suggests that the wrongful act occurred prior to [its] promulgation.").

Shorenstein also argues that it can recover against ERI for implied contractual indemnity. Under this theory, one party may shift its contractual liability to a second party where the second party causes the first party to breach a contract with a third party. *See Carrillo v. Jam Productions, Ltd.,* 173 Ill. App. 3d 693, 697, 527 N.E.2d 964, 967 (1991). Shorenstein argues that if it breached a contract with ISI, ERI should indemnify Shorenstein for ISI's resulting damages. *See* Shorenstein's Resp. at 7. The Court has already dismissed ISI's purported breach of contract claim against Shorenstein. *Supra* at 4. As a result, no jury reasonably could find that ERI caused Shorenstein to breach a contract with ISI.

**Conclusion**

For the foregoing reasons, the Court dismisses ISI's claims against ERI and Crown Castle except for the defamation, tortious interference with prospective economic advantage, and indemnity claims and dismisses ISI's claims against Shorenstein except for the indemnity claim. The Court also denies ERI's and Crown Castle's motions for summary judgment on ISI's defamation and tortious interference with prospective economic advantage claims [docket no. 74, 88], denies ERI's motion for summary judgment on its abuse of process claim [docket no. 81], and grants ERI's motion for summary judgment on Shorenstein's claim for indemnity [docket no. 84]. The case is set for a status hearing at 9:30 a.m. on December 12, 2005 to set a trial date and discuss the possibility of settlement.

         /s/ Matthew F. Kennelly
         MATTHEW F. KENNELLY
         United States District Judge

Date: November 23, 2005