**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **INSTALLATION SERVICES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 06 C 9** |
| | ) | |
| **CROWN CASTLE BROADCAST USA CORP. and SHORENSTEIN REALTY SERVICES, L.P.,** | ) ) ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| **INSTALLATION SERVICES, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Case No. 04 C 6906** |
| | ) | |
| **CROWN CASTLE BROADCAST USA CORP., SHORENSTEIN REALTY SERVICES, L.P., ELECTRONICS RESEARCH, INC.,** | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In October 2004, Installation Services, Inc. (ISI) sued Electronics Research, Inc. (ERI), Crown Castle Broadcast USA Corp., and Shorenstein Realty Services, L.P., asserting a variety of state law claims relating to a construction project on the Hancock building in downtown Chicago. *See Installation Svcs., Inc. v. Electronics Research, Inc.*, No. 04 C 6906 (N.D. Ill.). After the defendants moved for summary judgment, ISI argued that the defendants' motions did not address a number of the claims in its complaint. The defendants responded that ISI's

complaint did not give fair notice of these purported claims, and the Court agreed. *See Installation Svcs., Inc. v. Electronics Research, Inc.*, No. 04 C 6906, 2005 WL 3180129, *2-3 (N.D. Ill. Nov. 23, 2005). Consequently, the Court dismissed the claims that the complaint inadequately alleged.

On December 6, 2005, ISI moved to amend its complaint to include the dismissed claims. On December 21, 2005, the Court denied ISI leave to amend, concluding that allowing an amended complaint would cause undue delay as well as unfair prejudice to the defendants. On January 3, 2006, ISI filed this lawsuit, determined to have its additional claims heard one way or another. The complaint seeks relief against Shorenstein and Crown Castle for promissory estoppel (Count 1), breach of contract (Count 2), and defamation and tortious interference with prospective economic advantage (Count 3). Shorenstein responded by filing a cross claim and third-party complaint against Crown-Castle and ERI, respectively, seeking indemnity. Shorenstein has also filed a counterclaim against ISI for negligence (Count 1), conversion (Count 2), promissory estoppel (Count 3), and breach of contract (Count 4). The Court has consolidated the two cases for trial.

The parties have now filed five motions for summary judgment. Shorenstein and Crown Castle have each filed motions for summary judgment on ISI's claims. ISI has moved for summary judgment on Shorenstein's counterclaim.[1] ERI has moved for summary judgment on

---

[1] ISI concedes that the Court should deny its motion for summary judgment on Counts 3 and 4 of Shorenstein's counterclaim, given Shorenstein's admission that Crown Castle acted as its agent. *See* ISI Reply at 3. The Court agrees that Shorenstein has admitted that Crown Castle acted as Shorenstein's agent. *See* Shorenstein Resp. to ISI's Mot. for Summ. Judg. at 7. As a result, we deny ISI's motion for summary judgment on Counts 3 and 4 of Shorenstein's counter-claim. ISI has withdrawn its motion for summary judgment on Counts 1 and 2 of Shorenstein's counterclaim. *See* ISI Reply at 3.

Shorenstein's third-party claim, and Crown Castle has moved for summary judgment on Shorenstein's cross-claim. For the following reasons, the Court grants Shorenstein's motion against ISI in part and denies it in part, grants Crown Castle's motion against ISI in part and denies it in part, denies ISI's motion against Shorenstein, grants ERI's motion against Shorenstein, and grants Crown Castle's motion against Shorenstein.

## Facts

Familiarity with the facts of the case is presumed. *See Installation Svcs., Inc. v. Electronics Research, Inc.*, No. 04 C 6906, 2005 WL 3180129, *1 (N.D. Ill. Nov. 23, 2005). Any additional facts that are relevant to the case are discussed in the legal analysis that follows.

## Discussion

Summary judgment is proper when the evidence, when viewed in a light most favorable to the non-moving party, presents "no genuine issue as to any material fact" such that 'the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). In applying this standard, all disputed issues of fact are to be resolved in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)

1. **Shorenstein's motion for summary judgment against ISI**

    a. **Promissory estoppel**

Shorenstein has moved for summary judgment on all three counts of ISI's new complaint. The first count proceeds on a promissory estoppel theory and alleges that Crown Castle's employee, Ray Tattershall – acting as an agent for Shorenstein – told ISI to buy a winch and that he "would get the money" for ISI. The complaint further alleges that after ISI purchased the

winch, which cost more than $270,000, ISI was never repaid by Crown Castle or anyone else.

Under Illinois law, a plaintiff seeking to recover on a promissory estoppel claim must prove that the defendant made an unambiguous promise to the plaintiff upon which the plaintiff reasonably and forseeably relied to his detriment. *Vajda v. Arthur Anderson & Co.*, 253 Ill. App. 3d 345, 356, 624 N.E.2d 1343, 1350 (1993). Shorenstein has moved for summary judgment, arguing that no jury reasonably could find that Crown Castle's alleged promise was unambiguous. Shorenstein also argues that "there is no evidence that Crown Castle ever unambiguously promised that *Shorenstein* would reimburse ISI for the cost of this equipment." Shorenstein Mem. at 2 (emphasis in original).

Tattershall's alleged promise, which specified the type of winch ISI should buy and assured ISI that it would be reimbursed, was not too indefinite or ambiguous to satisfy the first element of a promissory estoppel claim. Unlike a promise to loan money that does not specify an interest rate or duration for the loan, *Demos v. Nat'l Bank of Greece*, 209 Ill. App. 3d 655, 661-62, 567 N.E.2d 1083, 1088 (1991), or a promise to provide employment that does not specify a salary or position, *Sembos v. Phillips*, 376 F.3d 696, 704 (7th Cir. 2004), a promise to reimburse a promisee's particular expenditure – even if it does not specify a price – is not too indefinite to be relied on. *See Chatham Surgicore, Ltd. v. Health Care Svc. Corp.*, 356 Ill. App. 3d 795, 801, 826 N.E.2d 970, 975 (2005) (holding promise to reimburse plaintiff for health care costs unambiguous); *Truck City of Gary, Inc. v. Schneider Nat. Leasing*, 814 N.E.2d 273, 279 (Ind. App. Ct. 2004) (Indiana law; holding that promise to reimburse plaintiff for truck repairs could support judgment in favor of plaintiff on promissory estoppel theory). Accordingly, a jury reasonably could find that the promise was unambiguous.

4

Shorenstein also argues – in cursory fashion – that ISI cannot recover on its promissory estoppel claim because "there is no evidence that Crown Castle ever unambiguously promised that *Shorenstein* would reimburse ISI for the cost of this equipment." Shorenstein Mem. at 2 (emphasis in original). Shorenstein concedes, however, that Crown Castle was acting as Shorenstein's agent on the Hancock project, *see* Shorenstein Resp. to ISI Mot. for Summ. Judg. at 7. As such, Shorenstein was liable for Crown Castle's broken promises, so long as those promises were made with actual or apparent authority. *See Phipps v. Cohn*, 139 Ill. App. 3d 210, 213, 487 N.E.2d 428, 431 (1985). Shorenstein does not argue that Crown Castle exceeded its authority in making the promise.

For this reason, a jury reasonably could find that Crown Castle's promise was legally binding on Shorenstein. The Court denies Shorenstein's motion for summary judgment on Count 1 of ISI's complaint.

   b.   **Breach of contract**

ISI's breach of contract claim is based on a July 30, 2001 letter from Crown Castle's agent Mead Elliot to ISI's president Ron Romano. The letter states in relevant part as follows:

> This letter is intended to confirm our understanding of certain principal terms regarding the performance by [ISI] of work in connection with the East Tower improvement project at the John Hancock Center in Chicago, Illinois.
>
> We have discussed and generally agreed upon a scope of work to be performed in connection with the antenna improvement project. A portion of the project involving the removal of the existing CBS antenna and the removal of the existing pole structure is described in the AIA, A107 Limited Scope Project Agreement among ISI, [CBS], and SRI Michigan Avenue Venture, LLC[,] which is being signed today. As we discussed, the parties anticipate entering into one or more additional agreements with ISI with respect to additional portions of the overall antenna improvement project.
>
> By signing this letter, ISI agrees that it will perform the scope of the work discussed to

5

date for an amount not to exceed $1.3 million (including the amount payable to ISI under the Limited Scope Project Agreement referred to above). Such acknowledgment, of course, will be subject to the execution and delivery of one or more additional contracts in substantially the form as that which is being signed today for the antenna and pole removal work, and to the understanding that the scope of work will not change substantially from that which has been discussed.

Pl. Compl., Ex. A. The letter is signed by Mead Elliot and Ron Romano.

Shorenstein contends that summary judgment is proper on ISI's breach of contract claim because the purported contract contains no "definite and certain" terms. It also maintains that the contract is indefinite because it only refers to "additional agreements," which were apparently never executed. Neither argument is a basis for summary judgment. First, the July 30 letter contains more than enough agreed-upon terms to constitute a contract. The parties agreed upon a price and a description of the work to be performed. It is true that the letter does not itself describe the scope of the work but rather refers to an agreement arrived at during a previous discussion. ISI has, however, offered evidence that in those discussions, the parties agreed that the work would include "[t]he takedown of CBS's antennas, the antennas that were on the side of the tower; pull down the tower; rebuild the tower; and install the new antenna systems and the transmission line feeding system." Romano Dep. at 33. This description of the work along with a price of $1.3 million is sufficiently detailed for a jury to find the contract binding on both parties. *See Lankton-Ziegle-Terry and Associates, Inc. v. Griffin*, 156 Ill. App. 3d 765, 766, 509 N.E.2d 785, 786 (1987).

Regarding Shorenstein's second argument, Illinois courts routinely enforce preliminary contracts that are made in the context of ongoing negotiations. *See Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992) (citing *Quake Construction, Inc. v. Am. Airlines*, 141 Ill. 2d 281, 565 N.E.2d 990 (1990); *Borg-Warner Corp. v. Anchor Coupling Co.*, 16 Ill. 2d 234,

156 N.E.2d 513 (1958)). It makes no difference whether the contract contemplates future agreements that never materialize, so long as the court can discern sufficient agreed-upon terms. *See Dawson*, 997 F.2d at 374 ("The fact that a formal written document is anticipated does not preclude enforcement of a specific preliminary promise.").

Shorenstein also argues that ISI's breach of contract fails because after Romano signed the July 30 letter, he discovered there were some terms with which he no longer agreed. We see no reason why Romano's after-the-fact realization that he agreed to a contract with unfavorable terms would alter the binding nature of the contract. Regardless, Shorenstein has cited no case law in support of its argument. Consequently, the argument is forfeited for present purposes.

Because a jury reasonably could find that Shorenstein breached a contract with ISI, the Court denies Shorenstein's motion for summary judgment on Count 2 of ISI's complaint.

c. **Defamation**

ISI's defamation claim against Shorenstein is based on two alleged statements by John Kapp, in which he said that "ISI was not qualified or competent to do the work on the Hancock project" and that ISI was "overcharging" or "gouging" on the project. Shorenstein has moved for summary judgment, arguing that these statements cannot support an action for defamation because they are statements of opinion. *See Doherty v. Kahn*, 289 Ill. App. 3d 544, 557, 682 N.E.2d 163, 172 (1997).

For purposes of defamation law, Illinois classifies opinions into two different groups: "pure opinion," in which a speaker states the facts on which he bases his opinion and then expresses a comment, and "mixed opinion," in which a speaker states an opinion that appears to be based on facts that have not been disclosed. *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App.

7

3d 861, 866, 658 N.E.2d 1225, 1230 (1995). When a mixed opinion gives rise to the inference that undisclosed facts justify the opinion expressed, it may be actionable. *Doherty*, 289 Ill. App. 3d at 557. To determine whether a statement is a fact or an opinion based on undisclosed facts, courts evaluate the totality of circumstances, including whether the statement has a precise core of meaning; whether the statement is objectively verifiable; whether the literary context of the statement implies that it has factual content; and whether the broader social context in which the statement appears implies fact or opinion. *See Brennan v. Kadner*, 351 Ill. App. 3d 963, 969, 814 N.E.2d 951, 958 (2004).

In *Hopewell v. Vitullo*, 299 Ill. App. 3d 519, 701 N.E.2d 99, 104 (1998), the plaintiff sued the defendant for remarking that the plaintiff was "fired because of incompetence." The court said that the broad scope of the term "incompetent" meant that it lacked the detail necessary to have a precise and readily understood meaning. *Id.* The court elaborated that the meaning of the word was particularly elusive "without the context and content of the statement to limit the scope of "incompetent." *Id.* at 519, 701 N.E.2d at 104. Other cases cited by ISI have held that similarly ambiguous statements are actionable, but in those cases the court found the statements verifiable because of other factual statements made at the same time. *See Bogosian v. Board of Educ. of Community Unit School Dist. 200*, 134 F. Supp. 2d 952, 957 (N.D. Ill. 2001) ("Standing alone, [the phrase 'unprofessional'] could be construed as a statement of opinion, but the verifiable factual basis for the opinion is clear from the balance of Ms. Gould's statements."); *Barakat v. Matz*, 271 Ill. App. 3d 662, 672, 648 N.E.2d 1033, 1042 (1995) (holding statement that "plaintiff's practice was a joke" was actionable, where defendant also said that he examined some of plaintiff's previous patients and found nothing wrong with them); *Quality Granite*

8

*Const. Co., Inc. v. Hurst-Rosche Engineers, Inc.*, 261 Ill. App. 3d 21, 26, 632 N.E.2d 1139, 1142 (1994) (holding that comments were actionable where defendants said that the contractor failed to complete the project in a timely manner, did not complete punch list items, and did not properly interpret the contract documents, plans, and specifications as bid).

By itself, Kapp's statement that ISI was "not qualified or competent" is too vague to be capable of verification. And ISI has offered no other statements that shed light on the phrase's meaning. As in *Honeywell*, therefore, the phrase cannot form the basis of a defamation action.

We come to a different conclusion with respect to the alleged statement concerning "overcharging" and "gouging." This statement is similar to the one recently found actionable in *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, — N.E.2d —, 2006 WL 1766708 (Ill. App. Ct. 2006). In *Imperial Apparel*, the plaintiff and defendant were competing discount clothing retailers. The defendant published a full page ad in the *Chicago Sun-Times*, which stated that the plaintiff inflated the price and compromised the quality of its clothing. The court said that the defendant's statement suggested that the plaintiff was selling imitation goods of inferior quality and concluded that it could be construed as an opinion based on undisclosed facts. The court noted that the context of the statement – a competitor's full page ad in a newspaper – would not ordinarily lead a reader to infer the statement was factual. It nevertheless concluded that a reasonable reader could conclude that the ad was stating actual facts about the plaintiff and the originality and quality of its goods.

In this case, Kapp's alleged statement about ISI overcharging and gouging only relates to price and does not refer to quality. Nevertheless, the context of the statement, another factor we must consider under *Brennan*, is more associated with a factual assertion than would be the case

9

with a competitor's advertisement in a newspaper. Kapp's alleged statement was made during a business meeting in which people responsible for supervising the Hancock project were discussing whether the project was proceeding according to plans. A reasonable person would expect, in this professional setting, that one would not accuse a contractor of overcharging unless the opinion were based on facts. Accordingly, the Court denies Shorenstein's motion for summary judgment on ISI's defamation claim in Count 3 of its complaint.[2]

### d. Tortious interference with prospective economic relations

In its tortious interference claim, ISI alleges that Shorenstein's allegedly defamatory statements prevented it from securing future business from CBS. To prevail on a claim for intentional interference with prospective economic advantage, a plaintiff must prove a reasonable expectancy of entering into a valid business relationship, the defendant's knowledge of the expectancy, an intentional or unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and damage to the plaintiff resulting from the defendant's interference. *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406-07, 667 N.E.2d 1296, 1299 (1996).

Shorenstein has moved for summary judgment, arguing that ISI has offered no evidence that it had a reasonable expectation of completing the Hancock project. Shorenstein maintains that it "never agreed to ISI's demand of a [twenty-five percent] winter conditions premium[,] and there is no evidence that ISI would be allowed to continue on the project without Shorenstein's

---

[2] Shorenstein argues that any alleged defamatory statements would be conditionally privileged. *See* Shorenstein Mem. at 10. ISI does not contest this argument, but maintains instead that a jury should decide whether Shorenstein abused the privilege. *See* ISI Resp. at 3. Shorenstein does not dispute that a jury should determine whether the privilege was abused. *See* Shorenstein Reply at 9.

10

agreement to ISI's demand for winter charges." *See* Shorenstein Mem. at 11. In response, ISI contends that the Court already resolved this issue in its summary judgment ruling in the related case and should not reconsider it here. *See Installation Svcs., Inc.*, 2005 WL 3180129 at *6.

As Shorenstein points out, the issue in this case is distinct from the one we previously decided. In the other case, ISI sued ERI – not Shorenstein – for tortious interference, alleging that ERI's defamatory statements convinced CBS to hire someone else to finish the Hancock construction project. ERI responded by arguing that ISI had no legitimate expectation of finishing work on the project because CBS refused to agree to the winter conditions premium. Given the timing of the defamatory statements, however, we concluded that a jury reasonably could find that absent the defamatory statements, ISI would have come to terms with CBS, despite their initial disagreement.

In the present motion, Shorenstein argues that irrespective of any defamatory statements, ISI would not have completed the Hancock project because Shorenstein itself – not CBS – would not have approved the winter conditions premium. In addition, Shorenstein maintains that ISI has offered no evidence that it could have continued working on the project without Shorenstein's approval. It is conceivable that the record may contain evidence that disputes this point, but ISI has not indicated what that evidence might be. Instead, it has relied on the evidence and argument it offered in response to ERI's motion for summary judgment in the earlier-filed case. That evidence and argument has no bearing on the argument that Shorenstein has made here.

In sum, ISI has not offered evidence from which a jury reasonably could find that it had a legitimate expectation of completing the Hancock project in light of Shorenstein's refusal to

11

approve the winter condition's premium. Accordingly, the Court grants Shorenstein's motion for summary judgment on ISI's tortious interference claim in Count 3 of ISI's complaint.

2. **Crown Castle's motion for summary judgment against ISI**

a. **Breach of contract**

Crown Castle has moved for summary judgment on ISI's breach of contract claim, arguing that it was not bound by the terms of the letter signed on July 30, 2001 because it signed the letter as an agent acting on behalf of Shorenstein. ISI responds that it did not know who Crown Castle represented and can therefore hold Crown Castle liable.

An agent is not bound by the authorized contracts entered into on behalf of its principal, so long as the agent discloses the name of the principal. *See Central States, Southeast and Southwest Areas, Health & Welfare Fund v. Pitman*, 66 Ill. App. 3d 300, 302, 383 N.E.2d 793, 795 (1978). Where, however, the principal is not disclosed or only partially disclosed, the agent is bound by the contracts into which it enters. *See Kimco Corp. v. Murdoch, Coll & Lillibridge, Inc.*, 313 Ill. App. 3d 768, 771, 730 N.E.2d 1143, 1146 (2000). A principal is partially disclosed when the third party knows that the agent is contracting on behalf of a principal but does not know the identity of the principal. *Id.*

ISI has offered evidence that it did not know the identity of the principal on behalf of whom Crown Castle was contracting. In his deposition, Ronald Romano testified as follows:

> Q: Is it your understanding that Crown Castle was negotiating with you on behalf of someone else?
> A: I was just negotiating with Crown Castle for the job.
> Q: You don't know whether Crown Castle was negotiating with you on behalf of the CBS or the FM Group or Shorenstein?
> A: No. I know the tower going up was for the broadcasters, but I only negotiated with Crown Castle.

> Q: Do you know whether Crown Castle was negotiating with ISI on behalf of those broadcasters?
> A: No. I was just negotiating with them for the job. Who they were negotiating with, I wasn't privy to. I know the customers that's all.

Romano Dep. at 10-11. Though Romano later contradicted this testimony, when he said, "I think [Crown Castle] represented everybody. I think CBS, Shorenstein," Romano Dep. at 520, an internal contradiction in a witness' deposition testimony cannot be resolved on a motion for summary judgment. *See Mears v. Montgomery*, No. 02 Civ. 0407BSJMHD, 2004 WL 964093, *21 (S.D.N.Y. May 5, 2004); *MCI Worldcom Networks Svcs., Inc. v. Clearwater Drilling, Inc.*, No. 01 Civ. 9961, 2002 WL 31444940, *1 (S.D.N.Y. Nov. 1, 2002). Because a jury reasonably could find that ISI did not know who Crown Castle represented when it entered into the July 30, 2001 contract, the Court denies Crown Castle's motion for summary judgment on ISI's breach of contract claim (Count 2).

### b. Promissory estoppel

ISI's promissory estoppel claim against Crown Castle – like the one against Shorenstein – is also based on Crown Castle's alleged promise that payment for the winch "would be taken care of." Crown Castle has moved for summary judgment, arguing that the promise was too ambiguous to be enforced and that ISI could not have reasonably relied on the promise because it knew that Crown Castle was acting as an agent for someone else.

The Court has already rejected Crown Castle's argument regarding the ambiguity of the alleged promise to reimburse ISI for the winch. In its second argument, Crown Castle contends that ISI could not reasonably believe that Crown Castle would pay ISI for the winch because it knew that ISI represented Shorenstein and CBS. ISI offers no response to Crown Castle's

13

argument and is therefore deemed to have conceded the point. For this reason, the Court grants Crown Castle's motion for summary judgment on ISI's promissory estoppel claim (Count 1).

### 3. ERI's motion for summary judgment on Shorenstein's third party claims.

Shorenstein has sued ERI in a third party complaint, alleging that ERI must indemnify Shorenstein in the event that Shorenstein is found liable for ISI's wrongful removal from the Hancock project. ERI has moved for summary judgment, arguing that the parties' written indemnity agreement does not cover the acts alleged by ISI in its complaint and that common law indemnity does not apply. "Indemnity provisions contained in a contract are interpreted in Illinois according to the intention of parties." *Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.*, 902 F. Supp. 150, 153-54 (N.D. Ill. 1995). In addition, "indemnity provisions are not favored and are strictly construed against the indemnitee." *Id.*

ERI signed a contract in February 2002 agreeing to indemnify Shorenstein for any claims "arising from [or] relating to the Work." The word "Work" is defined as ERI's antenna erection efforts. Shorenstein seeks indemnity for ISI's claims relating to its termination from the Hancock project, arguing that ERI caused the termination by making defamatory statements to CBS and others. Shorenstein contends that ISI's lawsuit makes claims "arising from or relating to the Work," because they involve the manner in which ERI obtained the "Work."

We reject Shorenstein's argument for the same reasons we rejected its similar argument in the earlier-filed case. *See Installation Svcs., Inc.*, 2005 WL 3180129 at *7. ISI's claims against Shorenstein concern acts that allegedly occurred in the fall of 2001 – well before the indemnity agreement existed and ERI's antenna erection commenced. For this reason, no jury reasonably could find that the parties agreed to include these claims in their indemnity

agreement. *See Jackson Nat'l Life Ins. Co.*, 902 F. Supp. at 153-54 ("In this case, there is no evidence that [the indemnity agreement's rules] were in effect when the alleged misconduct took place; on the contrary, the only evidence introduced by the parties suggests that the wrongful act occurred prior to [its] promulgation.").

Shorenstein also argues that it is entitled to implied indemnity. In Illinois, the doctrine of implied indemnity provides that "where one party's breach of contract causes a second party to breach a separate contract with a third party, the breaching party is liable for the second party's liability to the third party." *Carrillo v. Jam Productions, Ltd.*, 173 Ill. App. 3d 693, 697, 527 N.E.2d 964, 967 (1988). As ERI points out, however, Shorenstein has offered no evidence that ERI's breach of a contract with Shorenstein caused Shorenstein to breach a contract with ISI. Shorenstein has offered evidence that ERI caused Shorenstein to breach a contract by making defamatory statements about ISI, but that was well before ERI and Shorenstein entered into their contract. Thus, any breach of the ERI/Shorenstein agreement could not have caused a breach of the ISI/Shorenstein agreement.

For these reasons, the Court grants ERI's motion for summary judgment on Shorenstein's third party claim.

### 4. Crown Castle's motion for summary judgment on Shorenstein's cross-claim

Shorenstein has also sued Crown Castle for indemnity, alleging that Crown Castle must indemnify Shorenstein if a jury finds it liable to ISI for Crown Castle's promise to pay ISI a winter conditions premium and Crown Castle's promise to repay ISI for its purchase of an expensive winch. Crown Castle has moved for summary judgment, arguing that Shorenstein has offered no evidence that the parties' written indemnity agreement would cover liability

15

stemming for any such promises.  The written indemnity agreement between Crown Castle and Shorenstein is found in the Project Management Agreement (PMA), a contract which was signed on July 31, 2001 by, among others, Crown Castle and Shorenstein.  The PMA articulates Crown Castle's obligations as supervisor of the Hancock antenna project.

In Crown Castle's opening memorandum in support of its motion for summary judgment, it argues that the PMA could not possibly cover liability for the two promises allegedly made because the PMA only allowed indemnity for property damage and bodily injury.  *See* Crown Castle Mem. at 3.  In response, Shorenstein points out another indemnity provision in the PMA, which requires each party "to indemnify and hold harmless the other for any breach by it of any term, provision or requirement of the Agreement."  See Shorenstein Resp. 2.  Shorenstein contends that Crown Castle's promises breached the PMA because they were not authorized under the PMA.

The problem with Shorenstein's argument is that it fails to indicate where the PMA says that Crown Castle was prohibited from making these promises.  Shorenstein points to a cost estimate attached to the PMA, which did not include allocations for a winter conditions premium or winch.  Neither the estimate nor any other part of the contract that Shorenstein refers to, however, prohibits Crown Castle from approving costs not included in the estimate.  Because Shorenstein has not offered evidence that Crown Castle's alleged promises breached the terms of the PMA, no jury reasonably could find that the PMA requires Crown Castle to indemnify Shorenstein for liability arising out of Crown Castle's promises.

Shorenstein also argues that it should be entitled to implied indemnity.  As Crown Castle correctly points out, however, Illinois prevents a plaintiff from recovering under a theory of

implied indemnity where the plaintiff and defendant have entered a written indemnity agreement. *See Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1113 (7th Cir. 1992) (citing *Quilico v. Union Oil Co. of Cal.*, 58 Ill. App. 3d 87, 97, 374 N.E.2d 219, 226 (1978)) ("Recovery under a contract providing for indemnity obviates any right to recovery under the common law theory of implied indemnity since by such an express contract the parties have already themselves determined how and under what circumstances losses shall be allocated.").

Shorenstein argues that *Carroll* and *Quilico* stand only for the obvious proposition that a party cannot recover under a common law theory of indemnity where a valid indemnity agreement covers the particular claim for which the party seeks indemnification. In *Quilico*, however, the court quoted at length a passage from *Booth-Kelly Lumber Co. v. S. Pac. Co.*, 183 F.2d 902, 906-07 (9th Cir. 1950), which says that the mere existence of an indemnity agreement between two parties precludes recovery under the common law:

> "We also agree with the court below that the question of liability is not to be determined under any common law obligation apart from the contract. We think it is important to examine the rules of the common law in order more accurately to determine the meaning of the written contract . . . . But, since the parties have themselves dealt with the question of indemnity in their written contract, we think it is fair to say that they intended it, rather than some general common law rule, to govern their rights and liabilities in this situation."

*See Quilico*, 58 Ill. App. 3d at 97, 374 N.E.2d at 226 (quoting *Booth-Kelly Lumber*, 183 F.2d at 906-07). Because Shorenstein and Crown Castle agreed to resolve their indemnity rights through a written indemnity agreement, Shorenstein may not recover under a theory of implied indemnity. For this reason, the Court grants Crown Castle's motion for summary judgment on Shorenstein's cross-claim.

## Conclusion

For the foregoing reasons, the Court denies Shorenstein's motion for summary judgment [docket no. 68 in Case No. 06 C 9] on Counts 1, 2, and the defamation claim in Count 3 of ISI's complaint, but grants Shorenstein's motion for summary judgment on the tortious interference with prospective economic relations claim in Count 3 of ISI's complaint. The Court grants Crown Castle's motion for summary judgment [docket no. 165 in Case No. 04 C 6906] on Count 1 of ISI's complaint, but denies Crown Castle's motion for summary judgment on Count 2 of ISI's complaint. The Court denies ISI's motion for summary judgment on Shorenstein's counterclaim [docket no. 65 in Case No. 06 C 9]. The Court grants ERI's motion for summary judgment on Shorenstein's third party claims [docket no. 61 in Case No. 06 C 9]. The Court grants Crown Castle's motion for summary judgment on Shorenstein's cross-claim [docket no. 169 in Case No. 04 C 6906].

<div style="text-align: right;">
_____
MATTHEW F. KENNELLY
United States District Judge
</div>

Date: July 13, 2006