IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INSTALLATION SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 04 C 6906 |
| ) | |
| ELECTRONICS RESEARCH, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

This case was tried to a jury on two state law claims by plaintiff Installation Services, Inc. ("ISI") against defendant Electronics Research, Inc. ("ERI"), arising out of a construction project on the John Hancock building in Chicago. The jury returned a verdict for ERI on ISI's defamation claim but found for ISI on its tortious interference with prospective economic advantage claim. The jury awarded ISI $616,717 in compensatory damages. In a related action, Case No. 06 C 9, ISI filed suit against Crown Castle Broadcast USA Corp. and Shorenstein Realty Services, LP. This Court consolidated the two actions for trial purposes. Several claims in the related action were disposed of on summary judgment, *see Installation Svcs., Inc. v. Crown Castle Broadcast USA Corp.*, Nos. 06 C 9 & 04 C 6906, 2006 WL 202422, *1 (N.D. Ill. July 13, 2006), and ISI settled with Crown Castle and Shorenstein on the claims that remained. Certain costs allegedly incurred only on the 06 C 9 case are at issue in the bill of costs filed by ISI.

At the close of the evidence, and again after the jury returned its verdict, ERI moved for

1

entry of judgment as a matter of law under Federal Rule of Civil Procedure 50(b). In the alternative, ERI now also moves for remittitur or a new trial under Federal Rule of Civil Procedure 59. ERI also objects to certain expenses that ISI included in its bill of costs. For the reasons stated below, the Court denies ERI's motions and overrules its objections to ISI's bill of costs.

## Facts

Familiarity with the facts of the case is presumed. *See Installation Svcs., Inc. v. Crown Castle Broadcast USA Corp.*, Nos. 06 C 9 & 04 C 6906, 2006 WL 202422, *1 (N.D. Ill. July 13, 2006); *Installation Svcs., Inc. v. Electronics Research, Inc.*, No. 04 C 6906, 2005 WL 3180129, *1 (N.D. Ill. Nov. 23, 2005). Any additional facts that are relevant to the case are discussed in the legal analysis that follows.

## Discussion

**1.  Motion for judgment as a matter of law**

Rule 50 of the Federal Rules of Civil Procedure authorizes a court to grant a motion for judgment as a matter of law if "there is no legally sufficient evidentiary basis for a reasonable jury to find for th[e] party on that issue . . . ." FED. R. CIV. P. 50(a)(1). *See also* FED. R. CIV. P. 50(b). The Court will not overturn a "jury verdict as long as a reasonable basis exists in the record to support [it]." *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 599 (7th Cir. 1998). The Seventh Circuit has explained that a party seeking to overturn a jury verdict "assumes a Herculean burden." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 372 (7th Cir. 2000). The Court views the evidence in the light most favorable to the party that prevailed and draws reasonable inferences in its favor and may enter judgment for the moving party only if no

rational jury could have found for the party that prevailed. *Id.*

ERI contends that ISI failed to meet its burden of proof at trial on its claim of tortious interference with prospective economic advantage. Specifically, ERI claims that ISI did not prove causation and that the jury instead relied on "speculation and sheer conjecture" to find in favor of ISI on the tortious interference claim. *See* Def. Reply at 2. ERI further argues that ISI's defamation claim was analytically intertwined with its tortious interference claim and that because the evidence was insufficient to support the defamation claim, the jury's verdict in favor of ISI on the tortious interference claim must be overturned. *See* Def. Mot. at 2.

To prove tortious interference with prospective economic advantage, a plaintiff must establish "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Voyles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288, 300-01, 751 N.E.2d 1126, 1133 (2001) (citations omitted). ERI contends that ISI failed to prove causation.

At trial, ISI presented the testimony of Dennis Quinn, an ironworker who worked on the Hancock project and served as the union steward for the ironworkers at the site and who later worked for ERI when it took over the job. Quinn's role as union steward was to ensure the safety of the Hancock project and that no one was breaking union rules or conditions. Quinn overheard ERI's Tom Silliman describe to CBS's Chuck deCourt in November 2001 that Silliman did not believe the work was "up to par" and that

> the gin pole they didn't feel was sufficient; and the rigging, they didn't think the rigging was sufficient or strong enough, and they didn't like the way it was up there. That's

3

about it, that they didn't think it was capable of handling the job, and they didn't like the
way he [Ron Romano, ISI's principal] came in there and went about doing the job.

Quinn testimony at 16.[1] Quinn also testified that he heard Silliman explain to Mead Elliot that ERI could do the job "cheaper, faster, better. They'd work in rain, snow, wind, whatever, and they'd come up and do it in a shorter amount of time." *Id.* at 18.

Robert Boskovich, president and business manager of Ironworkers Local 1, also testified regarding comments he overheard Silliman make to deCourt. Boskovich stated that he overheard Silliman say to deCourt that ISI wasn't qualified and that ISI didn't have the right equipment. *See* Boskovich testimony at 6-9.

ISI also offered circumstantial evidence that ERI wrongly interfered with ISI's contract. On a Sunday morning, with no work crews around, deCourt asked Ernie Jones, vice president of ERI, to meet him at the Hancock building to work out the details of ERI taking over the project from ISI. ERI contends that deCourt and John Kapp, a Shorenstein employee, offered legitimate reasons for terminating ISI, relating to the time-line of the job and certain winter charges that ISI needed to add on to the contract price. ISI argues, however, that the jury was entitled to draw its own conclusions regarding causation based on its inferences from the circumstantial evidence and its assessment of the credibility of the witnesses.

For example, ISI argues that although deCourt testified about his claimed reasons for terminating ISI on the project and bringing on ERI, the jury was entitled to draw conclusions regarding the veracity of that testimony in light of the other evidence presented, such as the seemingly secretive meeting with ERI on a Sunday morning without work crews around. ISI

---

[1] The parties evidently have not yet obtained the entire trial transcript but rather have only the testimony of certain witnesses and have submitted it in that form.

also points to the winter contract negotiations with ERI, which ISI argues showed that its winter charge was only $136,163 but that ERI's contract price quotation was ten times higher. Pltf. Resp. at 10. ISI argues that the jury was allowed to question why, even with the great price disparity, deCourt did not resume negotiations with ISI. ISI also notes that deCourt and Kapp's explanations for terminating their contract with ISI were contradicted by other evidence at trial, notably the time-line of the events and the jump in the contract price that resulted from the switch to ERI to complete the Hancock job.

The jury reasonably could have concluded from the totality of the evidence that deCourt terminated the contract with ISI because of Silliman's statements regarding the supposedly insufficient rigging and deficient gin pole and the incompetent work that he claimed ISI was performing. As the Seventh Circuit has explained, "[w]hen a plaintiff offers specific evidence from which the jury may reasonably infer that the proffered reasons are not truthful, the case turns on the credibility of the witnesses." *Harvey v. Office of Banks and Real Estate*, 377 F.3d 698, 712 (7th Cir. 2004). It is not the Court's province to "second-guess a jury on credibility issues." *Id.* The jury was entitled to weigh the testimony of Quinn, compare the circumstantial evidence in the case to the testimony of deCourt and Kapp, and believe or disbelieve the testimony as it saw fit based on the evidence presented and the demeanor of the witnesses. *See Emmel v. Coca-Cola Bottling Company of Chicago*, 95 F.3d 627, 633-34 (7th Cir. 1996) ("defendants are off base in arguing that because [their witnesses'] testimony . . . was not contradicted directly, the jury had to accept it. The jury may have thought them liars. It is the prerogative of a jury . . . to disbelieve uncontradicted testimony unless other evidence shows that the testimony must be true.") On this basis, ERI has given the Court no reason to question the

5

jury's decision.[2]

ERI next contends that ISI's claims for defamation and tortious interference with prospective economic advantage are analytically intertwined. *See* Def. Mot. at 2. Therefore, ERI contends, ISI's tortious interference claim cannot stand unless ISI also proved its defamation claim. ERI appears to concede that the jury's verdicts on the two claims can be reconciled by virtue of the fact that the defamation claim was subject to a statute of limitations defense that did not affect the tortious interference claim. It argues, however, that the defamation claim was deficient even without that defense and that for this reason, the verdict on the tortious interference claim must fall as well.

ISI contends that the authorities ERI uses to support its argument are inapposite. ERI argues that "[w]hen a party makes both defamation and intentional interference claims, the two claims are analytically intertwined," and thus one cannot stand without the other. *Fedders Corp. v. Elite Classics*, 279 F. Supp. 2d 965, 971 (S.D. Ill. 2003), *citing Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 172 (7th Cir. 1993). ISI points out that the strand of case law upon which ERI relies derives from *Mittelman v. Witous*, 135 Ill. 2d 220, 251, 552 N.E.2d 973, 987-88 (1990), a case in which the Illinois Supreme Court refined the parameters and requirements of the common law torts of defamation *per se*, intentional interference with prospective business relationships, and intentional interference with contract. In deciding what claims the plaintiff had alleged, the court stated that in Mittelman's case,

the defamation and tortious interference counts are analytically intertwined in our view.

---

[2] To be clear, the Court does not conclude that mere disbelief of the testimony of deCourt and Kapp by itself would support the verdict. But there was far more than that, as the Court has discussed.

> Defamatory statements *may*, in themselves, give rise to a cause of action for libel or slander and, at the same time, become the means by which the tortious interference with contractual relationships or prospective economic advantage is committed.

*Id.* (emphasis added).

ERI's characterization of *Mittelman* and its progeny as holding that a tortious interference claim can never stand without a finding of defamation is, to put it mildly, a stretch. Further, ERI cites no case holding that proof of defamation is required for a plaintiff to prove tortious interference.

Because ERI has identified no Illinois case requiring a finding of defamation to support a claim of tortious interference, the Court sees no basis to disregard or alter the Illinois Supreme Court's identification in *Voyles* of the required elements for a tortious interference claim. *See Voyles*, 196 Ill. 2d at 300-01, 751 N.E.2d at 1133. The Court therefore rejects ERI's argument and concludes that there was a legally sufficient evidentiary basis for a reasonable jury to have found for ISI on the tortious interference claim.

ERI also argues that it was entitled to a competitor's privilege. Illinois law recognizes a competitor's privilege, *see Mannion v. Stallings & Co.*, 204 Ill. App. 3d 179, and considers it an affirmative defense to a claim of intentional interference. *A-Abart Elec. Supply, Inc. v. Emerson Elec. Co.*, 956 F.2d 1399, 1407 (7th Cir. 1992). Throughout the proceedings, ERI never asserted the competitor's privilege as an affirmative defense, nor did it tender a jury instruction on that point or object on that basis to the instructions given to the jury. As a result, ERI has forfeited any defense of competitor's privilege and is precluded from raising that affirmative defense this late in the proceedings. *See* Fed. R. Civ. P. 51(c).

For these reasons, the Court denies ERI's motion for judgment as a matter of law.

**2.     Remittitur, or in the alternative, motion for a new trial**

ERI moves pursuant to Federal Rule of Civil Procedure 59(e) to alter the judgment, arguing that the jury verdict is excessive and against the weight of the evidence and should be reduced. A court may vacate a jury verdict for excessiveness only if it is "monstrously excessive" or if the evidence and verdict are not rationally connected. *See Harvey*, 377 F.3d at 713-14. If a court determines that a damages award is excessive, a remittitur, not a new trial, is the appropriate remedy. *Davis v. Consolidated Rail Corp.*, 788 F.2d 1260, 1263 (7th Cir. 1986).

ERI contends that ISI failed to prove how it was damaged when ERI took over the Hancock project. ISI argues, however, that the evidence presented showed that the jury's verdict was reasonable and that ISI incurred even greater damages than the jury awarded. ISI submitted evidence regarding the value of its contract with CBS, which was $544,652 plus 25%, for a total of $680,815. ISI also presented evidence that ERI entered into a $1,745,500 contract with CBS to complete ISI's work on the project. Further, ISI showed through the testimony of Ernie Jones and Peter Sockett that ERI's contract price ballooned to more than $4 million with subsequent add-ons, which the evidence reflects ISI likely would have performed if it had kept the contract. In addition, ISI provided evidence that prior to ERI's interference, ISI was the only tower and antenna contractor on the Hancock building and that Krueger Tower has been the sole contractor on the Hancock ever since. ISI presented evidence that Krueger Tower received $1,664,659 for Hancock Building work, which ISI contends it would have been paid absent ERI's interference.

The jury was entitled to take into consideration all the evidence discussed above in deciding the amount of damages to award. After more than a day of deliberations, the jury valued ISI's lost prospective advantage at $616,717, which was much less than the total damages

that ISI had claimed. The jury obviously found that some of the damages claimed by ISI were properly compensable and some were not. The Court concludes that the jury's $616,717 verdict was within reason and was rationally connected to the verdict and the evidence presented on the issue of damages.

ERI argues that the amount ISI recovered via settlement with Crown Castle and Shorenstein should be set off against the damage award made by the jury. ISI contends that set-off is inappropriate because Illinois law does not permit contribution or set-off among intentional tortfeasors. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 205-06, 538 N.E.2d 530, 542 (1989) (holding that intentional tortfeasors are not entitled to contribution under the Illinois Contribution Among Joint Tortfeasors Act). ERI offers no legal support for its argument that ISI's settlement with Crown Castle and Shorenstein should be set off against the damage award. The Court denies ERI's request for a set-off.

The Court may grant a new trial if "the verdict is against the weight of the evidence or the trial was unfair to the moving party." *David v. Caterpillar, Inc.*, 324 F.3d 851, 863 (7th Cir. 2005); *see* FED. R. CIV. P. 59(a). ERI has offered no reason for a new trial, instead devoting its entire analysis in this section to the issue of remittitur. *See* Def. Mot. at 13-15. ERI has failed to show that the verdict was against the weight of the evidence or that the trial was in any way unfair to ERI. The Court denies ERI's motion for a new trial.

**3.    ISI's bill of costs**

ISI filed a verified bill of costs in the amount of $7,753.04, of which ERI objects to $5,169.17. Specifically, ERI contends that it should not be responsible for the costs of certain depositions because those depositions were taken for the 06 C 9 case and did not pertain to the

9

claims in the 04 C 6906 case.

A court may tax costs for, among other things, fees of the clerk, disbursements for printing and witnesses, copies, fees court reporters for all or any part of the transcripts necessarily obtained for use in the case, and docket fees. 28 U.S.C. § 1920. ERI contends that it should not be assessed with the costs of the depositions of Robert Boskovich, Charles deCourt, Robert East, John Kapp, Dennis Quinn, Robert Romano, and Peter Sockett because they were taken during discovery in the 06 C 9 case, in which ERI was not named as a defendant. The problem for the Court, however, is how to reconcile ERI's repeated and extensive questioning of these witnesses at deposition and its use of the evidence gathered in those depositions at trial in the 04 C 6906 case, despite this Court's admonishments to keep the discovery in the two cases separate. Though the cases were two separate lawsuits, they were related, and ERI evidently questioned the witnesses for that reason.

In short, ERI opened the door to recovery of these costs in the 04 C 6906 case by its own conduct and cannot close it now simply by pointing to the case captions. The inquiry under 28 U.S.C. § 1920 does not depend on case numbers but rather turns on whether copies, papers, transcripts, etc., were "necessarily obtained for use in the case." *Id.* The Court finds that the requested costs are appropriately recoverable in the present case.

## Conclusion

For the reasons stated above, the Court denies ERI's motion for judgment as a matter of law or in the alternative remittitur or a new trial [docket no. 241] and taxes costs in favor of ISI

in the amount of $7,753.04.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 30, 2006